# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| JESSICA WILLIAMS,<br>　　*Petitioner*,<br>vs.<br>CHRISTINE BODO, *et al.*,<br>　　*Respondents*. | 2:04-cv-01620-KJD-LRL<br><br>ORDER |

This habeas matter under 28 U.S.C. § 2254 currently is before the Court for a decision on the merits on the multiple grounds presented. In reviewing the matter, it appears that Ground 8 of the petition, as amended, presents federal constitutional claims that were not fairly presented to and exhausted in the state courts through to the Supreme Court of Nevada. Petitioner therefore will be directed to show cause why the petition is not subject to dismissal as a mixed petition unless the unexhausted claims are dismissed and/or petitioner seeks other appropriate relief in this regard. Further, for the reasons discussed herein, the Court, on a properly-supported motion, will revisit the matter of whether petitioner should be appointed conflict-free federal habeas counsel.

### *Background*

Petitioner Jessica Williams seeks to overturn her 2001 Nevada state conviction, pursuant to a jury verdict, of six counts of driving with a prohibited substance in her blood in violation of N.R.S. 484.3795(1)(f).

The criminal case arose from the tragic deaths of six teenagers assigned to a roadside cleanup crew who were struck and killed on March 18, 2000, when the vehicle that Williams was driving veered off the road into the median. According to the factual summary by the Supreme Court of Nevada, Williams had stayed up all night the prior evening. Williams admitted that she had smoked marijuana approximately two hours before veering off the road and that she had used the designer drug "ecstacy" the prior evening. Williams had a pipe with marijuana residue and a plastic bag with marijuana. Blood tests returned positive results for the presence of the active ingredient of marijuana and a metabolite thereof. Williams maintained that she had fallen asleep at the wheel. *See Williams v. State*, 118 Nev. 536, 50 P.3d 1116, 1126-27 (2002)(*Williams I*).

At the relevant time, under the chapter subheading "General Provisions," the second statute in Chapter 484 of the Nevada Revised Statutes provided as follows:

> **NRS 484.013 Definitions**.
>
> As used in this chapter, unless the context otherwise requires, the words and terms defined in 484.014 to 484.217, inclusive, have the meanings ascribed to them in those sections.

N.R.S. 484.013, *as amended through* 1999 Laws, ch. 622, § 21, p. 3415 (currently redesignated in pertinent part as N.R.S. 484C.010).

Under the same chapter subheading "General Provisions" in Chapter 484, nearly 100 statutes provided definitions that were generally applicable to the remaining provisions in Chapter 484. The definitions were set forth in alphabetical order, from "Administrative roadblock" in N.R.S. 484.014 through "Vehicle" in N.R.S. 484.217.

These generally-applicable statutory definitions for the entirety of Chapter 484 included the following definition:

> **NRS 484.1245 "Prohibited substance" defined.**
>
> "Prohibited substance" means any of the following substances if the person who uses the substance has not been issued a valid prescription to use the substance *and the substance is classified in schedule I or II pursuant to NRS 453.166 or 453.176 when it is used*:
>
> 1. Amphetamine.

        2. Cocaine or cocaine metabolite.

        3. Heroin or heroin metabolite (morphine or 6-monoacetyl morphine).

        4. Lysergic acid diethylamide.

        5. Marijuana or marijuana metabolite.

        6. Methamphetamine.

        7. Phencyclidine.

N.R.S. 484.1245, *as added by* 1999 Laws, ch. 622, § 21, p. 3414-15  (currently redesignated as N.R.S. 484C.080)(emphasis added).

It is undisputed that marijuana metabolite was not classified in the schedule I or II referred to in N.R.S. 484.1245 at the time of the incident.[1]  In contrast, other metabolites referred to in N.R.S. 484.1245 were classified under schedules I or II, such as, for example, the classification of cocaine metabolite under schedule II.[2]

Williams was convicted of, *inter alia*, six counts of violating N.R.S. 484.3795(1)(f), which provided in pertinent part at the relevant time:

    1. A person who:

        . . . .

        (f) Has a prohibited substance in his blood or urine in an amount equal to or greater than the amount set forth in subsection 3 of N.R.S. 484.379,

    and does any act or neglects any duty imposed by law while driving or in actual physical control of any vehicle on or off the highways of this state, if the act or neglect of duty proximately causes the death of, or substantial bodily harm to, a person other than himself, is guilty of a category B felony . . . .

N.R.S. 484.3795(1)(f), *as amended through* 1999 Laws, ch. 480, § 9, p. 2452-53, ch. 622, § 28, p. 3422-23 (currently redesignated as N.R.S. 484C.430(1)(f)).

/ / / /

/ / / /

---

[1] *See, e.g., State v. Williams*, 120 Nev. 473, 480, 93 P.3d 1258, 1262 (2004)(*Williams II*).

[2] *See, e.g.,* #76-19, Ex. 14, at 2 (state district court finding).

In using the phrase "prohibited substance," N.R.S. 484.3795(1)(f) did not expressly state a definition for "prohibited substance" over and above the generally-applicable definition provided for in N.R.S. 484.1245 for the entirety of Chapter 484.

N.R.S. 484.379(3), in turn, provided in pertinent part as follows:

> 3. It is unlawful for any person to drive or be in actual physical control of a vehicle on a highway or on premises to which the public has access with an amount of a prohibited substance in his blood or urine that is equal to or greater than:

| *Prohibited substance* | *Urine Nanograms per milliliter* | *Blood Nanograms per milliliter* |
|---|---|---|
| (a) Amphetamine | 500 | 100 |
| (b) Cocaine | 150 | 50 |
| (c) Cocaine metabolite | 150 | 50 |
| (d) Heroin | 2,000 | 2 |
| (e) Heroin metabolite | | |
| (1) Morphine | 2,000 | 50 |
| (2) 6-monoacetyl morphine | 10 | 10 |
| (f) Lysergic acid diethylamide | 25 | 10 |
| (g) Marijuana | 10 | 2 |
| (h) Marijuana metabolite | 15 | 5 |
| (i) Methamphetamine | 500 | 100 |
| (j) Phencyclidine | 25 | 10 |

N.R.S. 484.379(3) *as amended through* 1999 Laws*,* ch. 480, § 7, p. 2451, ch. 622, § 23, p. 3415-16 (currently redesignated as N.R.S. 484C.110(3)).

In using the phrase "prohibited substance," N.R.S. 484.379 did not expressly state a definition for "prohibited substance" over and above the generally-applicable definition provided for in N.R.S. 484.1245 for the entirety of Chapter 484. Rather, it arguably would appear that N.R.S. 484.379 instead merely provided requisite *quantitative values* for "prohibited substances" as previously defined in N.R.S. 484.1245. The list of prohibited substances in N.R.S. 484.379 tracks the same list of prohibited substances that is found in

1 N.R.S. 484.1245, in the same order.  The express terms of N.R.S. 484.379 add only the
2 required nanogram values of same that are required for criminal liability.  Nowhere in the
3 express terms of N.R.S. 484.379 does the statute purport to define "prohibited substance"
4 differently than the general definition of "prohibited substance" applicable throughout Chapter
5 484 under N.R.S. 484.1245.

6 In her state post-conviction petition,[3] Williams alleged that she was entitled to a new
7 trial because marijuana metabolite was not a "prohibited substance" under N.R.S. 484.1245.
8 She alleged that her conviction therefore was unconstitutional under the Due Process Clause
9 because of the two possible bases for a conviction under N.R.S. 484.3795(1)(f) – the
10 presence of marijuana or marijuana metabolite in her bloodstream – one was invalid as a
11 matter of law.  She based the claim upon the United States Supreme Court decisions in *Griffin*
12 *v. United States*, 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991), and *Leary v. United*
13 *States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969).[4]

14 Petitioner did not include within her state post-conviction petition a claim that she was
15 denied fair warning under the relevant statutory language that having marijuana metabolite
16 in her blood would subject her to criminal liability, in violation of her right to due process under
17 the Fourteenth Amendment.  Petitioner also did not include within her state post-conviction
18 petition a claim that a state judicial construction of the statute as including marijuana
19 metabolite as a prohibited substance would constitute a judicial expansion of the statute that
20 similarly denied her fair warning that having the metabolite in her blood would subject her to
21 criminal liability, in violation of her right to due process.

---

[3] *See* #76-17, Exhs. 10 & 11 (state petition and supporting memorandum).

[4] *See Griffin*, 502 U.S. at 59, 112 S.Ct. at 474 (emphasis added):

> . . . . Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law - whether, for example, the action in question is protected by the Constitution, is time barred, *or fails to come within the statutory definition of the crime*. When . . . jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. . . . .

On state post-conviction review, the state district court granted Williams a new trial based upon the premise that marijuana metabolite was not a prohibited substance under N.R.S. 484.1245.[5]

The State appealed, contending, *inter alia*, that petitioner's claim was procedurally barred under N.R.S. 34.810 because she could have raised the claim on direct appeal but had not. The State further argued that the claim also was without merit.

In defending the appeal, petitioner, *inter alia*, continued to present her claim that the conviction was unconstitutional under the Due Process Clause because the presence of marijuana metabolite in her bloodstream did not fall within the statutory definition of the crime and therefore could not provide a possible basis for conviction under N.R.S. 484.3795(1)(f).

In defending the appeal, however, it does not appear that petitioner presented a claim that she was denied fair warning under the relevant statutory language that having the metabolite in her blood would subject her to criminal liability, in violation of her right to due process under the Fourteenth Amendment. In defending the appeal, it does not appear that petitioner presented a claim that a state judicial construction of the statute as including marijuana metabolite as a prohibited substance would constitute a judicial expansion of the statute that similarly denied her fair warning that having the metabolite in her blood would subject her to criminal liability, in violation of her right to due process under the Fourteenth Amendment.[6]

The Supreme Court of Nevada reversed the state district court's grant of a new trial. The state high court held that the claim was procedurally barred under N.R.S. 34.810 because it could have been raised on direct appeal but was not. In reaching this holding, the state supreme court considered whether petitioner could demonstrate cause and prejudice excusing her procedural default of the claim. In the course of the prejudice analysis, the court held that Williams could not establish actual prejudice to overcome the procedural bar

---

[5] *See* #76-19, Ex. 14.

[6] See #76-20, Ex. 16 (Williams' answering brief on the post-conviction appeal).

because marijuana metabolite was a prohibited substance. *See State v. Williams*, 120 Nev. 473, 93 P.3d 1258 (2004)(*Williams II*).

The state supreme court observed that "the plain language of NRS 484.379 clearly lists marijuana metabolite as a prohibited substance and gives the amount in nanograms per milliliter that must be present in the blood or urine to constitute a violation of the statute." *Williams II*, 120 Nev. at 478, 93 P.3d at 1261. The court further observed that N.R.S. 484.3795(1)(f) "incorporates by reference NRS 484.379, which specifically lists marijuana metabolite as a prohibited substance . . . [such that] the enhanced penalties of NRS 484.3795 apply to any person who has a proscribed amount of marijuana metabolite in her blood or urine under NRS 484.379." 120 Nev. at 479, 93 P.3d at 1261.

The Supreme Court of Nevada referred to NRS 484.1245 – the only statute in Chapter 484 that expressly defined the phrase "prohibited substance" – as "another statutory provision" in "the same statutory scheme." *Williams II*, 120 Nev. at 479, 93 P.3d at 1261. The state high court acknowledged that marijuana metabolite was not classified under schedule I or II as provided for in NRS 484.1245. The court concluded however as follows:

> In this case, although marijuana is listed in schedule I, marijuana metabolite, carboxylic acid, is not listed in schedule I or II. While marijuana metabolite is not listed on either schedule, it is clear from the plain language of both NRS 484.379 and 484.1245 that marijuana metabolite is a prohibited substance.

120 Nev. at 479, 93 P.3d at 1262. The court additionally relied upon the state legislative history. The court found that the legislative history demonstrated that "the Legislature intended to specifically list marijuana metabolite as a prohibited substance under NRS 484.1245 and 484.379(3), and to incorporate it by reference under NRS 484.3795(1)(f)." 120 Nev. at 481, 93 P.3d at 1263. The state high court's summary of the legislative history does not include any specific statements by legislators reflecting an intent to include marijuana metabolite as a prohibited substance in circumstances where the substance did not qualify as a "prohibited substance" under the express language of NRS 484.1245 because the substance was not listed in a relevant schedule – to the extent, *arguendo*, that any such statements in any event arguably could overcome the express language of the statute.

On federal habeas review, in Ground 8, petitioner continues to pursue her argument that marijuana metabolite does not constitute a prohibited substance under the relevant statutes and that she therefore is entitled to a new trial under *Griffin* and *Leary*. She further alleges that she was denied due process of law in violation of the Fourteenth Amendment because: (a) she was denied fair warning under the relevant statutory language that having marijuana metabolite in her blood would subject her to criminal liability; and (b) the state supreme court's allegedly unforeseeable and retroactive judicial expansion of the statute to include the metabolite as a prohibited substance also deprived her of fair warning.

On federal habeas review, this Court held that the exhausted portion of this claim was not barred under the federal procedural default doctrine. The Court held that the claim was not procedurally defaulted on the basis that the state procedural bar did not constitute an adequate state law ground. The Court held that the bar was not an adequate state law ground because the Supreme Court of Nevada had departed from a practice of *sua sponte* appointing conflict-free counsel when the petitioner's former appellate counsel sought to raise their own ineffectiveness on direct appeal to excuse the procedural default of a claim when representing the petitioner as appointed state post-conviction counsel.[7]

In the answer to this claim, respondents expressly challenge the exhaustion of at least the claim alleging that the state supreme court's expansion of the statute deprived petitioner of fair warning in violation of due process.[8]

### *Governing Exhaustion Law*

Under 28 U.S.C. § 2254(b)(1)(A), a habeas petitioner first must exhaust her state court remedies on a claim before presenting that claim to the federal courts. To satisfy this exhaustion requirement, the claim must have been fairly presented to the state courts completely through to the highest court available, in this case the Supreme Court of Nevada.

---

[7] See #67, at 9-13.

[8] #74, at 25 n.5. The Court previously had directed respondents to present all remaining procedural defenses along with their answer on the merits. #73, at 4, lines 26-28.

-8-

*E.g., Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003)(*en banc*); *Vang v. Nevada*, 329 F.3d 1069, 1075 (9th Cir. 2003). In the state courts, the petitioner must refer to the specific federal constitutional guarantee and must also state the facts that entitle the petitioner to relief on the federal constitutional claim. *E.g., Shumway v. Payne*, 223 F.3d 983, 987 (9th Cir. 2000). That is, fair presentation requires that the petitioner present the state courts with both the operative facts and the federal legal theory upon which her claim is based. *E.g., Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005). The exhaustion requirement insures that the state courts, as a matter of federal-state comity, will have the first opportunity to pass upon and correct alleged violations of federal constitutional guarantees. *See,e.g., Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 2554-55, 115 L.Ed.2d 640 (1991).

Under *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), a mixed petition presenting both exhausted and unexhausted claims must be dismissed without prejudice unless the petitioner dismisses the unexhausted claims or seeks other appropriate relief. *See also King v. Ryan*, 564 F.3d 1122 (9th Cir. 2009)(discussing different stay-and-abey options).

### *Discussion*

While the Supreme Court of Nevada undeniably is the final arbiter of Nevada state law, the state supreme court's reading of the relevant state statutes in this case is – at best – problematic. The state high court's decision in *Williams II* arguably glosses over the fact that N.R.S. 484.1245 is not merely "another statutory provision" in "the same statutory scheme." Rather, under the most natural reading of the three statutes in question, N.R.S. 484.1245 arguably provides *the* definition of "prohibited substance" applicable to the other provisions, which by their express terms do not define "prohibited substance."

As noted, however, the Supreme Court of Nevada is the final arbiter of Nevada state law. A federal court, including even the United States Supreme Court, clearly cannot substitute its own judgment for that of the Supreme Court of Nevada on a question of Nevada state law. The state supreme court's decision in *Williams II* essentially "cuts the legs out from under" petitioner's claim that *Griffin* and *Leary* require a new trial because marijuana

metabolite is not a prohibited substance under the relevant Nevada statutes. This Court cannot look behind the state supreme court's holding on the state law predicate required for that federal claim. *See,e.g., Medley v. Runnels*, 506 F.3d 857, 862 (9th Cir. 2007).

Review of federal due process claims based upon the failure of the statute, or a judicial construction thereof, to provide fair warning as to prohibited conduct is another matter, however. Such claims clearly are within the cognizance of a federal court on federal habeas review. *See,e.g., Medley*, *supra*.

In this particular case, however, it would appear that petitioner's fair-warning due process claims were not fairly presented to the state courts and exhausted. To exhaust a claim, *both* the factual basis *and* the specific federal legal theory upon which the petitioner's claim is based must be fairly presented to the state courts. *E.g., Castillo, supra.* The Court does not have the discretion to simply ignore the exhaustion doctrine, except where it is dismissing a claim for lack of merit. *See* 28 U.S.C. § 2254(b)(2). And the exhaustion doctrine can be waived by the State only by an express waiver through counsel, which clearly has not occurred with regard to petitioner's fair-warning claims. *See* 28 U.S.C. § 2254(b)(3).

Williams' fair-warning due process claims do not appear to be subject to dismissal on their face, as, indeed, the claims would appear to have substantial arguable merit. The only option left to this Court therefore is to direct petitioner to show cause why the petition is not subject to dismissal as a mixed petition unless the unexhausted claims are dismissed and/or petitioner seeks other appropriate relief in this regard.[9]

---

[9] The Court notes that the United States Supreme Court granted a petition for *certiorari* to consider whether the admission of a laboratory report offered to prove a driver's blood alcohol content violated the Confrontation Clause when the analyst who prepared the report did not testify. *See State v. Bullcoming*, 147 N.M. 487, 226 P.3d 1 (2010), *cert. granted sub nom. Bullcoming v. New Mexico*, ___ S.Ct. ___, 2010 WL 2008002 (Sept. 28, 2010). Williams alleges in Ground 6 that she was denied due process because State witness Dana Russell allegedly testified falsely at trial that she tested Williams' blood samples. Petitioner maintains that other operators at the lab instead conducted the testing. While there is a factual relationship between the allegations in Williams' Ground 6 and the facts in *Bullcoming*, no Confrontation Clause claim would appear to have been exhausted and/or alleged herein to date, assuming, *arguendo*, that such a claim would relate back to Ground 6. The Court further notes that it has been provided no citation to evidence in the record – over and above unsupported statements by petitioner's counsel – establishing that the witness in fact testified falsely. It is axiomatic that unsupported factual statements by an attorney are not evidence.

The Court's consideration of these issues, and the resulting likely procedural posture going forward, has prompted it to also consider revisiting its prior denial of appointment of federal habeas counsel in lieu of current counsel, who also represented petitioner on direct appeal. Given the potential for a conflict of interest by present counsel in the event that the federal matter were stayed for exhaustion of state court remedies, the Court is inclined to revisit the issue of appointment of replacement counsel *on a properly-supported motion*.[10] Any appointment of replacement counsel would be subject to a demonstration – based upon the financial resources currently available to petitioner, as reflected by, *inter alia*, her financial paperwork from the institution – that she is financially eligible for appointment of counsel.

In this regard, the Court will direct that the Clerk of Court provisionally appoint the Federal Public Defender as co-counsel in this case. Such a provisional appointment now is a practical requirement under the Court's electronic docketing system in order for the Federal Public Defender to receive notices of filings with regard to the litigation of any counsel issue and other issues leading up to any actual and formal appointment. Put simply, the only way for the Federal Public Defender to receive such notices is to be listed as co-counsel on the docket sheet, per a provisional appointment.

The Court will give petitioner thirty days either to show cause as directed herein, to move for appointment of counsel, to move for an extension of time, or to seek other relief.

Nothing in this order precludes petitioner, following resolution of any counsel issue herein, from proceeding in state court in advance of the completion of any federal proceedings concerning exhaustion and associated requests for relief. Moreover, if this matter ultimately is stayed for further exhaustion, petitioner will be allowed to reopen the federal proceedings at any time for the purpose of amending the federal petition to present and preserve claims, even if unexhausted, subject to the continued stay thereafter of the federal proceedings pending exhaustion of the claims forming the basis for any such stay.

---

[10] See #48, at 2 (rejecting prior counsel motion in part because financial eligibility was not established by a proper showing).

-11-

If replacement counsel is appointed, the Court will reset the show-cause response deadline accordingly.

Finally, subject to the provisions of N.R.S. 484C.430(2),[11] as applicable, this Court's alternative dispute resolution procedures are available to the parties at any time in this matter, including while on any stay entered for exhaustion of state judicial remedies.

IT THEREFORE IS ORDERED that, within **thirty (30) days** of entry of this order petitioner either shall: (a) show cause why the petition is not subject to dismissal as a mixed petition unless the unexhausted claims are dismissed and/or petitioner seeks other appropriate relief in this regard, on the basis that the fair-warning due process claims in Ground 8 described herein are not exhausted; (b) move for appointment of replacement counsel; (c) move for an extension of time; or (d) seek other appropriate relief.

IT FURTHER IS ORDERED that the Federal Public Defender for the District of Nevada shall be provisionally appointed as co-counsel for petitioner, along with but currently not as a replacement for, current counsel.  The Court is provisionally appointing the Federal Public Defender at this juncture so that this order and subsequent related filings can be served expeditiously upon the Federal Public Defender on the electronic docketing system.  The provisional appointment also extends, however, to consulting with petitioner and/or her current counsel and potentially to presenting filings in response to this order, including potential filings such as a motion for full formal appointment of counsel or a motion for extension of time.  This provisional appointment will be vacated in the event that appointment of replacement counsel is not sought or is not granted following full consideration.

IT FURTHER IS ORDERED that, within **fifteen (15) days** of entry of this order, counsel with the Federal Public Defender shall file either a notice of appearance as provisional co-counsel or a notice reflecting the office's inability to represent petitioner in these proceedings.

---

[11] Formerly N.R.S. 484.3795(2).  The provision states: "A prosecuting attorney shall not dismiss a charge of violating the provisions of subsection 1 in exchange for a plea of guilty, guilty but mentally ill or nolo contendere to a lesser charge or for any other reason unless he knows or it is obvious that the charge is not supported by probable cause or cannot be proved at the time of trial.  A sentence imposed pursuant to subsection 1 may not be suspended nor may probation be granted."

1   The Clerk of Court shall send notices of electronic filing of this order and all
2   subsequent filings, until further order of the Court, **both** to the Federal Public Defender **and**
3   to petitioner's current counsel, Mr. John G. Watkins, Esq., and Ms. Ellen J. Bezian, Esq.
4   The Clerk further shall forward one copy of an application to proceed *in forma pauperis*
5   for an incarcerated person together a copy of the instructions for same to petitioner's counsel
6   along with this order, in connection with a potential demonstration of financial eligibility for
7   possible appointment of counsel.
8   DATED:  September 29, 2010

_____
KENT J. DAWSON
United States District Judge